FUERTES, PLAINTIFF AND APPELLEE, *v.* NOGUERA ET AL.,
DEFENDANTS AND APPELLANTS.

APPEAL from the District Court of Humacao in an Action
of Revendication.

No. 2720.—Decided July 19, 1923.

REVENDICATION—PURCHASE AND SALE—LEASE—POSSESSION—DELIVERY.—When a
person purchases a property by a public deed the civil possession passes from
the vendor to the vendee although the latter may lease it immediately to
the former. The continued possession by the lessee is possession by the
lessor. The lessee may be considered as a mere agent of the owner.

ID.—ID.—TITLE—POSSESSION—EVIDENCE.—When a plaintiff proves that he has
held title since a remote time (since 1902 in this case) and shows con-
tinuous acts of possession, he is entitled to recovery, particularly if the de-
fendants do not show any defect in the plaintiff's acquisition of title.

The facts are stated in the opinion.

*Messrs. F. González, M. Tous Soto* and *L. Muñoz Moral-
es* for the appellants.

*Mr. A. Aponte, Jr.,* for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

We substantially agree with the opinion rendered by the
District Court of Humacao and we transcribe it:

"This is an action brought by Faustino R. Fuertes against three
defendants, namely: Juan Noguera, Cristina Alvarez, his wife, and
The Fajardo Sugar Growers Association. The evidence shows the
facts to be as follows:

"In the year 1903 Manuel González Fernández purchased from
Santiago R. Palmer a property called Cercado Maldonado composed
at that time of 35.19 acres of land. Ten days thereafter González
Fernández died and was succeeded by his widow and children who
recorded the hereditary title to the said property. Shortly after it
was recorded the interested parties brought probate proceedings and
this property and several other properties were alloted to Clemen-
tina Lugo y Calzada in payment of her portion of the estate of their
testator. On October 2, 1912, Clementina Lugo sold to Faustino R.
Fuertes all of these properties, including the property called Cer-
cado Maldonado which is sued for in this action.

"It is well to observe that Santiago R. Palmer, who had sold
to Manuel González the said Cercado Maldonado property, gave

power of attorney to Emilio Cuadra to sell to Francisco Noya and his wife a tract of 100 acres of land to be segregated from a property called Cercado Torres or Maizales.

"Under this power of attorney Emilio Cuadra segregated the said tract of 100 acres from the Cercado Torres property and sold it to Noya and wife.

"Now, according to the registry, the plans and the actual facts, the Cercado Maldonado property and the Cercado Torres property were two distinct and independent properties.

"It appears that when Manuel González made his purchase, and also when Noya made his, all of these properties were in the possession of Faustino R. Fuertes, and the segregation of the 100 acres of Noya was made by taking the necessary number of acres from the Cercado Torres property according to the plan and survey made by surveyor Juan A. Dávila.

"At that time all of the properties were still in the possession of Fuertes as lessee and the said Fuertes did not deliver the property of Noya to the new lessee, Gustavo Preston, until about the year 1904 or 1905, and when he did deliver this property he delivered only the 100 acres and not the Cercado Maldonado property, of which he continued in possession for some time.

"Somewhat later Faustino Fuertes also delivered the properties in his possession belonging to the heirs of González because of the death of Manuel González, their predecessor.

"This was about the year 1905. In 1912 the plaintiff, Faustino Fuertes, bought all of these properties. But he leased them to the former owners. He did not need to inspect them because he had known them for more than twenty years. And it resulted that in 1913, when he went to take possession of the said properties, it was found that the Cercado Maldonado property was in the possession of the San Cristóbal Central which at that time was in the Federal Court under bankruptcy proceedings.

"It is well to state now that the property of Noya was sold by him to the San Cristóbal Central in 1911; but instead of its appearing as 100 acres it appeared as 130 acres and a fraction, or the Cercado Maldonado property and the 100 acres of Noya. For this reason the Registrar of Property of Humacao refused to record the sale to the San Cristóbal Central as regards the excess, the following appearing clearly and distinctly in the said registry: *'That record of the excess of thirty acres and a fraction was denied because they*

*did not appear within the same boundaries, and because it was a dif-ference too notable to be overlooked.'*

"With this denial in the registry of property regarding the excess of thirty acres and a fraction and ninety-eight acres and a fraction being recorded, because a small segregation of one acre and a fraction had already been made, the San Cristóbal Central was sold at public auction and this Noya property was purchased by the Naguabo Sugar Company, the predecessor of the Fajardo Sugar Growers Association.

"Immediately after this the plaintiff went to Bird Arias, the agent of the said company, and asked for the delivery of the property after examining the documents referring to it. Bird said to him that the documents would be examined in the office of attorney Muñoz Morales, but as they never agreed upon a date for that purpose, Fuertes found himself obliged to bring an action in the Federal Court against the Naguabo Sugar Company which had purchased the property at the public auction and later sold it to the Fajardo Sugar Growers Association. That suit was for the same property which is now sued for in this action, that is, the Cercado Maldonado property.

"In 1916 the plaintiff heard that Nogueras contemplated purchasing the Noya property and, therefore, Fuertes through attorneys Dexter and Aponte, wrote a letter to Nogueras informing him of the actual facts to the effect that he, Fuertes, was the owner of the Cercado Maldonado property which had been improperly included in the Noya property and warning him that if he purchased the property he would do so at his own risk and would not be able to invoke the status of a third person or innocent purchaser.

"On December 27, 1916, or a week after having received the letter from attorneys Dexter and Aponte, the said Nogueras purchased from the Fajardo Sugar Growers Association sixty acres of the Noya property, or what they called the part lying south of the road.

"The deed to this property was made on the basis that the Noya property was composed of 130 acres and a fraction and that the part south of the road contained sixty acres and a fraction, when the fact was that the whole property contained only 98.86 acres, according to the registry, and the part south of the road contained only forty acres.

"The defense of the defendants is that the Cercado Maldonado

property never existed, and that, therefore, the action can not be maintained.

"But it appears from the certificate of the registrar of property and the old plan of the properties that the Cercado Maldonado property has always existed and has had some natural boundaries that can not be mistaken, namely: On the east, an inlet and the Viejo River; on the south, the Viejo River; on the west, an inlet; on the north, the Fe plantation which belonged to Pereyó and from which it is separated by the road now under construction. These natural water boundaries on all sides except one have been admitted by the defendants themselves in their testimony of identification. And if this may be a small matter, Nogueras himself, when he purchased the Islote Quiñones property from José J. Benítez on October 3, 1913, accepted the following as the northern boundary of the property that he was then purchasing: 'On the north by the Viejo River which separates it from the Cercado Maldonado property of Santiago R. Palmer.' This means that he admitted the existence of the Cercado Maldonado property.

"Finally, for further identification, it will be sufficient to examine exhibit No. 3 of the evidence in rebuttal, that is, the deed of sale from the heirs of González to the San Cristóbal Central of May 15, 1912, in which the said heirs of González appear as selling to the said Central a strip of land of the Cercado Maldonado property, or of the same property now in litigation. Of course it is evident that if the predecessor of the defendants admitted the existence of the Cercado Maldonado property in 1913, his successors in interest can not now be heard to deny it.

"Defendant Nogueras testified before the court that he bought the property in good faith, inasmuch as he consulted attorney José Tous Soto who advised him that he could buy it without risk.

"We understand that this fact does not favor the defendant. Nogueras himself has admitted that the attorneys of Fuertes wrote him a letter in which they warned him that he should abstain from purchasing that property and notified him that the property of Fuertes had been improperly included in the Noya property; and they informed him furthermore that the property in question was recorded in the name of Faustino Fuertes and that there was an action pending in the Federal Court in which it was involved. Nogueras acknowledged having received that letter, but notwithstanding that, he bought the property without paying any attention to these facts and warnings which appear

from the registry of property and from the said letter. Under these conditions, can good faith be held to defeat the claim for the payment of the rents and profits? From the moment when Nogueras was informed of the facts his good faith ceased. Section 366 of the Civil Code reads as follows:

" 'He is a *bona fide* possessor who possesses as owner by virtue of a title sufficient in its terms and conditions to transfer the ownership, and the defects of which he is ignorant of. *Bona fide* possession ceases from the moment the possessor becomes acquainted with the defects of the title, or through a suit instituted by the owner of the thing to recover the same.'

"Section 365 of the Civil Code is as follows:

" 'The fruits of a thing do not belong to the simple possessor and shall be returned together with the thing to the owner thereof who claims the same, unless the possessor hold it *bona fide*.'

"For the reasons stated the complaint is sustained in all of its parts, and although this court understands that defendants Nogueras and wife should pay the value of the products, the amount thereof will be duly determined by a board of arbitrators appointed by the parties and the court.

"The costs are imposed upon the defendants."

The appellants' first assignment of error is as follows:

"That the court erred in fact and in law in holding that the property described in the second count of the complaint and called 'Cercado Maldonado' belongs to plaintiff Faustino R. Fuertes, who is entitled to recover the same from the present possessors."

Throughout all this it is assumed and declared that the complainant has a right "to" (*á*) but not in (*en*) the property. The appellants say:

"These documents satisfactorily show that Faustino R. Fuertes acquired the rights to the ownership of the property described in the deed of sale and that Mrs. Lugo, widow of González, was under obligation to make delivery thereof. There also arises the presumption of his right in the property, of his position as owner thereof with right of action to recover the same. But it is a fact that this presumption raised by the deed of sale in favor of the traditional act is destroyed by the evidence of the plaintiff himself . . ."

The theory is that the physical possession was never turned over to Fuertes. But the record clearly shows and the court so found that when Doña Clementina Lugo sold to the complainant in 1912, the latter left her in possession, giving her a lease to the said land which was to expire in 1914.

Now, when a person buys a piece of land and immediately leases the same to vendor, the civil possession is transferred from the vendor to the purchaser. The continued possession of the lessee is the possession of the lessor. This is elementary law. The lessee may be considered to be the agent of the landlord.

But even without a lease if the purchaser allows the vendor to remain in possession the right to the possession or the civil possession is transferred. If it were otherwise the resulting situation would be a gratuitous way of reducing the various periods of prescription which so far as we can see in this case would amount to thirty years. The whole question is settled by section 1365 of the Civil Code, as follows:

"Section 1365.—A thing sold shall be considered as delivered, when it is placed in the hands and possession of the vendee.

"When the sale should be made by means of a public instrument, the execution thereof shall be equivalent to the delivery of the thing which is the object of the contract, if in said instrument the contrary does not appear or may be clearly inferred."

It may be that, barring the exceptions mentioned in the article itself, the presumption of delivery when there is a formal deed is not rebuttable, but we need not decide that question in this case. There was a formal deed, a record in the registry and a due lease. Section 446 of the Civil Code may have some application, too, as follows:

"Sec. 446.—Acts merely tolerated and those clandestinely executed, without the knowledge of the possessor of a thing, or with violence, do not affect possession."

Moreover, a perfected contract without a formal deed would probably effect the same result. *López* v. *Lizardi,* 27 P. R. R. 691.

The other assignments of error are an attempt on the part of the appellants to show that the deed of their predecessor in title included the land in question. Substantially, on appeal, the appellants admit, as the record shows and the court found, that they are in possession of the land sought to be revendicated, although they apparently denied this in their answer. The old plans, the deeds, the testimony, all strongly tend to show that the "Cercado Maldonado" was a piece of property distinct from the "Cercado Torres." The evidence shows that the land of the predecessor in title proceeded from the "Cercado Torres." We agree with the appellee that the surveyors of the defendants, without being dishonest, could be mistaken and misled by their instructions.

Various predecessors in title of defendants recognized the existence of the "Cercado Maldonado," one of them specifically buying a small strip of land belonging to that property. As the court below points out, the boundaries here are natural and almost unmistakable, and, as appellee points out, if the vendor of defendants in possession of all the property had wanted to transfer a part of the "Cercado Maldonado" he would have expressly mentioned it or described its boundaries.

Independently of all this the complainant showed a title duly recorded in 1902. He showed the defendants in possession of the same and a holding against complainant, and such adverse holding was continued despite all sort of notice. The defendants have not satisfied us that there is any mistake in the origin of complainant's title or that they have a superior claim.

We agree with the appellants, however, that there is no reason for destroying the title of the defendants except in so far as it conflicts with the title of the complainant. The

judgment should therefore be modified in this regard and, as modified, affirmed.

*Modified and affirmed.*

Chief Justice Del Toro and Justices Aldrey, Hutchison and Franco Soto concurred.